

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-22-00314-CV

___

JANA SHEPHERD, APPELLANT

V.

HELEN PAINTER & CO., CATHERINE TAYLOR, AMY DEFOREST, YOUNGER
RANCH, LLC, SCOTT REAL ESTATE, INC., AND SHILA MANLEY, APPELLEES

___

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-295290-17, Honorable Megan Fahey, Presiding

___

December 1, 2023

MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Jana Shepherd, acting pro se, appealed from an order dismissing her claims against several parties for want of prosecution and a final summary judgment. The dispute arose from her failed attempt to acquire a parcel of realty owned by Younger Ranch, LLC. Those sued were Scott Real Estate, Inc. and its employee Shila Manley

___

[1] Because this matter was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

(together referred to as Scott), Helen Painter & Co. and its employees Catherine Taylor and Amy DeForest (referred to as Painter), and Younger Ranch, LLC (Younger). Shepherd asserted a myriad of contentions on appeal. Most concern the propriety of the dismissal and summary judgment. Others implicate the trial court's refusal to reinstate her claims after dismissal and the attorney's fees awarded her opponents. We affirm.

### Background

The property in question consisted of six acres owned by Younger. Shepherd contracted to buy it in July 2017. Painter acted as real estate agent for both parties.

Per an addendum to the sales contract, consummation of the deal was contingent upon Shepherd's selling a separate parcel of realty. Consequently, Younger was free to entertain and accept other offers in case Shepherd's purchase came to naught. Yet, if it received and accepted a subsequent offer during the interim, Younger was obligated to afford Shepherd opportunity to waive the contingency and proceed with the acquisition if she also deposited $1,000 in escrow. Failing to do both within three days of her receiving notice resulted in the automatic termination of the agreement.

Younger received another offer during the interim. Painter notified Shepherd of it. At that point, Shepherd informed Painter that she would waive the contingency and pay cash for the property. This was not followed by a deposit of $1,000 within three days, though. Around that same time, Shepherd discharged Painter and retained Scott to represent her in the transaction. Nevertheless, the sale never transpired, even though Younger afforded Shepherd another opportunity to perform the conditions within the addendum.

Believing herself aggrieved, Shepherd sued Painter and Younger in September 2017. So too did she sue Scott after they were joined as third-party defendants.

Painter and Younger eventually moved to dismiss the action for want of prosecution in July 2021. So too did those parties simultaneously seek reconsideration of the earlier denial of their motion for summary judgment. Scott acted similarly. In August 2021, they too moved to dismiss the cause for want of prosecution and, alternatively for summary judgment.

The trial court convened a hearing on the pending motions. Thereafter, it granted 1) Scott's motion to dismiss and 2) Painter's motions to dismiss and for summary judgment. Shepherd moved to reinstate the proceedings, which motion the trial court denied after conducting a live hearing upon it. So too did it grant motions for attorney's fees, thereby disposing of all claims and issues involved.

### Issues

Needless to say, the number of parties, course of proceedings, and the multiple trial court orders ultimately disposing of the cause render the issues before us somewhat difficult to follow. We divide them into three categories: 1) dismissal for want of prosecution, 2) summary judgment on the merits, and 3) summary judgment on attorney's fees.

### Dismissal for Want of Prosecution

Again, all defendants other than Younger moved to dismiss Shepherd's suit for want of prosecution. Shepherd contends that the trial court erred in granting their motions and failing to conduct a hearing on her subsequent motion to reinstate. We overrule those issues.

3

Due to its ease of disposition, we begin with her allegation that the trial court did not conduct a live hearing on her motion to reinstate the causes after dismissing them. Her argument is disingenuous. The record before us contains the transcript of a September 15, 2022 hearing whereat the motion was heard. Moreover, Shepherd personally attended the proceeding, as did other parties through legal counsel. During this very same hearing, the trial court also commented on Shepherd's latest motion to continue proceedings. Thus, it too was before the court at the time, contrary to her allegations otherwise.

Regarding the orders dismissing the claims for want of prosecution, same is reviewed under the standard of abused discretion, *Pence v. S&D Builders, LLC*, No. 07-21-00080-CV, 2021 Tex. App. LEXIS 9916, at *6-7 (Tex. App.—Amarillo Dec. 15, 2021 pet. denied) (mem. op.), as is the denial of a motion to reinstate. *Cummings v. Billman*, 634 S.W.3d 163, 166-67 (Tex. App.—Fort Worth 2021, no pet.). Furthermore, a trial court has inherent power to dismiss a cause when the plaintiff fails to prosecute it with due diligence. *Pence*, 2021 Tex. App. LEXIS 9916, at *6. Multiple factors may be considered when assessing such diligence, or lack thereof. They include 1) the age of the case; 2) the activity undertaken to develop it during its life, if any; 3) the requests for trial settings, if any; and 4) the existence of reasonable excuses for the delay. *Id.* at *9-10.

With those indicia in mind, we first note that the case was about four years old when dismissed. That period is at least about 30 months longer than the time in which our Supreme Court expects a trial court to dispose of non-family civil proceedings. *See* TEX. R. JUD. ADMIN. 6.1(a) (providing that civil cases other than family law matters be tried within 18 months from appearance date for jury cases and within 12 months from

4

appearance date in nonjury cases).  Thus, its time had passed under the administrative rule.

As for activity, Shepherd had two different attorneys represent her since the inception of the suit.  Both withdrew.  The most recent did so because she failed to pay and effectively communicate with him, at least that is what the attorney represented to the trial court when it granted leave to withdraw.  That happened in June 2021, or a bit over two months before the trial court signed its dismissal orders.  Moreover, the particular attorney also represented to the court that no depositions had been taken and little other discovery had transpired.  Shepherd cited us to nothing of record contradicting this.

The record also illustrates that she failed to appear for a deposition set by the opposing parties.  Nor did Shepherd cooperate with effort to reschedule it.  As said by opposing counsel: "with respect to cooperation between Ms. Shepherd and her counsel, we requested her deposition numerous times throughout the month of May and June."  What they "kept getting back was, 'Not available,' 'Can't do it,' 'Needs to be pushed off to maybe August, September.'"  So, the trial court heard not only that she conducted nominal discovery but also hindered the ability of others to do so.

Next, the record reflects that the cause had been set for trial several times.  Those dates were met with multiple motions for continuance, which motions were granted.  Though most were jointly filed between the parties, they, nonetheless, illustrate continuing delay in which Shepherd intentionally acquiesced.

Of further note is Shepherd's comment about mediation at the hearing on the motion to dismiss and her continuing attempt to pursue it.  Her latest invitation to do so was rejected in June 2021.  Interestingly, effort to resolve the case through settlement

negotiations or mediation served as the basis for many of the earlier motions to continue. Obviously, those efforts proved fruitless, for whatever reason. Nevertheless, her persistent effort to follow a path which much earlier proved untenable tends to contradict her interest in trying the cause. And, as those efforts at settlement proved fruitless, discovery apparently remained stagnant.

As for excuses, she placed the blame on her ex-attorneys. Allegedly, they refused to heed her numerous pleas to conduct discovery. None of these attorneys were present to confirm the allegation. Nor did she tender into the record any other evidence supporting her contention, despite alluding to the existence of emails. Moreover, the latest withdrew due to Shepherd's refusal to pay and effectively communicate with him. The latter can be viewed as some evidence that Shepherd impeded her attorney's ability to answer her purported pleas. Most importantly, though, ex-attorneys' supposed inaction does not explain her own failure to cooperate with the discovery efforts of others.

Shepherd also interjected Covid and its widespread effect. No doubt, it caused people to minimize physical interaction and impacted litigation. Then again, Zoom developed as a means by which people could overcome some obstacles created by the germ and move forward. Shepherd did not address why that medium went unutilized in preparation for trial.

The trial court's observations and questions to Shepherd best capture the situation. It uttered:

- "I mean, the problem here is this case has been pending for four years, and there's been no forward progress at great expense to the Defendants."

- "I think you were back here 11 months ago asking for more time on your case. Eleven months have passed, nothing's happened, and you failed

6

to show up for your deposition. What am I supposed to do with this case? It's not moving forward after four years."

- "Because your attorney was in here two months ago saying that you weren't cooperating with them and they needed to be removed from this case . . . ."

- "But they asked you to show up for your deposition, and you just didn't show up and didn't reschedule it. So how can you go to trial when you're not showing up for your deposition? You say that you have claims against them, and they're trying to conduct discovery so they can get ready for trial, which is scheduled in less than three weeks, and . . . they don't even understand what your claims are against them because you won't show up for your deposition, and this case has been pending for four years."

- "What I see is it looks like this is the ninth trial setting in this case. Is that correct? I'm just looking at my docket sheet."

- "I see eight trial dates that have been scratched through."

Given the trial court's perception of the circumstances and the evidence alluded to above, its decision to dismiss is not unreasonable. Nor does it deviate from controlling rules and principles. The same is no less true of the trial court's refusal to reinstate the four-year-old case. Her excuses for the delay and proof supporting same were tenuous, or so the trial court could have reasonably concluded. Accordingly, no discretion was abused in either instance. *See Preslar v. Garcia*, No. 03-13-00449-CV, 2014 Tex. App. LEXIS 2156, at *6-8 (Tex. App—Austin Feb. 26, 2014, no pet.) (mem. op.) (affirming the decision to dismiss a case for want of prosecution when it was over 40 months old with at least 21 months of inaction and no reasonable excuse was offered for the delay); *In re McBryde Family Trust*, No. 13-20-00473-CV, 2021 Tex. App. LEXIS 8539, at *16-17 (Tex. App.—Corpus Christi Oct. 21, 2021, no pet.) (mem. op.) (finding, among other things, that Covid-19 was not a reasonable excuse for the delay given the "overall minimal" activity in a case that had been on file for 18 months).

7

### *Summary Judgments*

As mentioned earlier, the trial court also entered summary judgments denying Shepherd's claims against Painter, Younger, and Scott. Having affirmed its orders of dismissal, we need not consider the summary judgments awarded to anyone other than Younger. Again, the claims against Younger were the only ones outside the umbrella of the dismissal orders.

Shepherd alleged only one cause of action against Younger. It consisted of breached contract. It allegedly breached it by refusing to sell her the realty in question. Younger moved for summary judgment on the claim, contending that her failure to perform various conditions ended its contractual obligation to her. Those conditions were 1) waiving the contingency that her duty to buy depended upon selling her house and 2) depositing $1,000 in escrow, which contingencies had to be completed within three days of being notified of the decision to accept the second offer.

Shepherd admitted that "[t]he standard written form contract unambiguously required an additional deposit to escrow as part of waiving the contingency." That is, the addendum she executed contained the following:

> B. If Seller [Younger] accepts a written offer to sell the Property, Seller shall notify Buyer [Shepherd] (1) of such acceptance AND (2) that Seller requires Buyer to waive the Contingency. Buyer must waive the Contingency on or before the 3rd day after Seller's notice to Buyer; otherwise the contract will terminate automatically and the earnest money will be refunded to Buyer.

> C. Buyer may waive the Contingency only by notifying Seller of the waiver and depositing $1,000.00 with escrow agent as additional earnest money. All notices must be in writing and are effective when delivered in accordance with the contract.

So, within three days of being informed of Younger's accepting a subsequent offer, Shepherd had to waive the contingency. And, there was only one way to do it. The

8

agreement obligated her by notifying Younger she waived the contingency "***and*** depositing $1000.00 with [the ] escrow agent as additional earnest money." (Emphasis added).

No one disputes that Younger accepted a subsequent offer and twice afforded Shepherd notice of it. Nor does anyone deny that Shepherd failed to perform both conditions required of her within three days of either notification. Indeed, Shepherd acknowledged her failure to timely deposit the $1,000 through an email and attachment sent on August 28, 2017. The attachment, according to her, was a "[s]igned . . . response to Notice regarding Contingency, indicating 'Buyer waives the contingency and deposits the additional earnest money with the escrow agent.'" Following that, we find her attestation that "I did not make the additional deposit to escrow." Her thus having failed to comply, the contract terminated per its own terms.

Nevertheless, effort was made to excuse the default. It came in the form of waiver. Purportedly, Younger waived the condition about depositing the additional $1,000. That occurred, in her view, when Younger's real estate agent only requested proof of financial ability to buy the property when delivering notice of the second offer. According to Shepherd, the real estate agent had "apparent authority" to waive the condition on behalf of Younger.

Yet, in urging the theory, she cited us to neither 1) legal authority specifying the elements of apparent authority nor 2) evidence raising an issue of fact as to their existence. Such was required by an appellant and one attempting to defend against a summary judgment motion by interjecting some defense. *See Hines v. Deutsche Bank Nat'l Trust Co.*, No. 02-14-00368-CV, 2015 Tex. App. LEXIS 11715, at *6-7 (Tex. App.—

9

Fort Worth Nov. 12, 2015, pet. denied) (mem. op.) (noting the nonmovant's burden to come forward with evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment). Similarly missing is substantive analysis supporting her contention, that is, analysis applying legal authority to evidence of record. We have no obligation to do any of that for her, sua sponte. *Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1, 18 (Tex. App.—Amarillo 2015), *aff'd on other grounds*, 526 S.W.3d 411 (Tex. 2017); *see Hornbuckle v. State Farm Ins.*, No. 02-15-00387-CV, 2016 Tex. App. LEXIS 11197, at *7-8 (Tex. App.—Fort Worth Oct. 13, 2016, no pet.) (mem. op.) (stating that the court has no duty to brief issues for an appellant). It matters not that she acted pro se. Such parties must also comply with the rules of appellate procedure. *Hornbuckle*, 2016 Tex. App. LEXIS 11197, at *7. And her omission is of particular importance here since the doctrine of apparent authority normally does not apply to real estate transactions. *Huginnie v. Loyd*, 483 S.W.2d 696, 701 (Tex. Civ. App.—Tyler 1972 writ ref'd n.r.e.); *Bugh v. Word*, 424 S.W.2d 274, 279 (Tex. Civ. App.—Austin 1968, writ ref'd n.r.e.) (*quoting Goode v. Westside Developers, Inc.*, 258 S.W.2d 844, 847 (Tex. Civ. App.—Waco 1953, writ ref'd n.r.e.)). Together, this means that Shepherd did not carry her appellate burden to establish the impropriety of summary judgment.

In short, the contract to buy the realty ended when Shepherd failed to perform the conditions required of her. Thus, Younger established its entitlement to summary judgment, as a matter of law, and we overrule her issue.

### *Attorney's Fees*

Lastly, Shepherd challenges the summary judgment through which the trial court awarded attorney's fees to her opponents. In support thereof, she asserts that 1) Younger

10

did not plea for attorney's fees and 2) everyone failed to prove the fees awarded were reasonable and necessary. We overrule the issue.

Regarding Younger's purported failure to seek fees through a pleading, Shepherd again misrepresents the record. Younger prayed for same in its original answer.

As for proving the amount of fees recoverable, Shepherd said much about applicable legal authority. Yet, no substantive analysis followed. As with her argument about "apparent authority," we are left to answer that on our own. But, again, that is not our duty. So, her effort again constitutes inadequate briefing resulting in the waiver of the complaint. *Hornbuckle*, 2016 Tex. App. LEXIS 11197, at *7-8 (holding that argument must include substantive analysis and by omitting it, one waives the complaint).

Possibly, her omission may be explained by the tenor of the evidence. Simply put, it negated her conclusory allegations. Indeed, the trial court had before it affidavits from legal counsel and their respective detailed bills for services provided. Those items illustrated 1) the qualifications of those performing services; 2) the services performed, who performed them, when they were performed, and the time necessary to perform them; and 3) the reasonable hourly rates for each of the services by each professional. More importantly, such addressed and satisfied the criteria deemed relevant by our Supreme Court in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2018). So too did and does it constitute ample evidence to establish, as a matter of law, the fees awarded were reasonable and necessary. Those fees were $88,706.60 to Helen Painter & Co, Catherine Taylor, and Amy DeForest, $30,872.00 to Scott Real Estate, Inc. and Shila Manley, and $6,237.50 to Younger.

11

To reiterate, we overrule each of Shepherd's issues and affirm the judgments of the trial court.


Brian Quinn
Chief Justice